MICHAEL E. TANKERSLEY
mtankersley@ftc.gov; (202) 326-2991
DANIEL O. HANKS
dhanks@ftc.gov; (202) 236-2472
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC  20580
Fax:  (202) 326-3768

MATTHEW H. FINE (Local Counsel) (CA Bar. No. 300808)
mfine@ftc.gov
Federal Trade Commission
10990 Wilshire Blvd, Suite 400
Los Angeles, CA  90024
Tel:  (310) 824-4300
Fax:  (310) 824-4380

ATTORNEYS FOR PLAINTIFF
FEDERAL TRADE COMMISSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    vs.<br><br>ITMEDIA SOLUTIONS LLC, DEV.XYZ LLC, TEAM.XYZ LLC, 123 LLC, XYZ LLC, GREAT LLC, General LLC,  MEDIA LLC, ADV MARKET DIRECT LLC, Direct Ad Sales LLC, MARKETING SOLUTIONS 33 LLC, DEC MKT LLC, Ads Full3 LLC, Sunset Marketing Services LLC, Arrow Eagle, LLC,Arrow Hawk, LLC, Gen Ads, LLC, Michael Ambrose, Daniel Negari, Jason Ramin, Grant Carpenter, Anisha Hancock, and Sione Kaufusi,<br><br>    Defendants. | Case Number: 2:22-CV-00073<br><br>**COMPLAINT FOR CIVIL PENALTIES, PERMANENT INJUNCTION, AND OTHER RELIEF** |

Plaintiff, the Federal Trade Commission ("FTC"), for its complaint alleges:

1.     Plaintiff brings this action under Sections 5(a), 13(b), and 16(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 53(b), and 56(a)(1), and Section 621(a) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s(a), to obtain civil penalties, preliminary and permanent injunctive relief, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Sections 604 and 607 of the FCRA, 15 U.S.C. §§ 1681b and 1681e.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

3.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 53(b).

## PLAINTIFF

4.     The FTC is an independent agency of the United States Government created by statute, which authorizes the FTC to commence this district court civil action by its own attorneys.  15 U.S.C. §§ 41–58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the FCRA, which protects the privacy of consumer financial information by limiting the provision and use of consumer credit reports.  15 U.S.C. §§ 1681-1681x.

## DEFENDANTS

### Corporate Defendants

5.     Defendant ITMEDIA SOLUTIONS LLC ("ITMedia Solutions") is a

California Limited Liability Company with its principal place of business at 2800 Olympic Blvd., Santa Monica, CA 90404.  Defendant ITMedia Solutions is the successor to California corporations IT Media, Inc., and Cash Now, Inc.  IT Media, Inc., absorbed Cash Now, Inc., by merger in December 2014, and ITMedia Solutions took over the merged corporations when IT Media, Inc., was dissolved in December 2018.  ITMedia Solutions (through IT Media, Inc.) and co-Defendants TEAM.XYZ LLC and DEV.XYZ, LLC, are successors to Cyber2Media, Inc., a California corporation that was dissolved in September 2016.

6.     Defendant DEV.XYZ LLC is a California Limited Liability Company with its principal place of business at 2800 Olympic Blvd., Santa Monica, CA 90404.

7.     Defendant TEAM.XYZ LLC is a California Limited Liability Company with its principal place of business at 2800 Olympic Blvd., Santa Monica, CA 90404.

8.     Defendant 123 LLC is a Nevada Limited Liability Company with its principal place of business at 2800 Olympic Blvd., Santa Monica, CA 90404, and a registered address at 318 North Carson Street, Suite 208, Carson City, NV 89701. Defendant 123 LLC is a holding company that is the sole owner of Defendants ITMedia Solutions, DEV.XYZ LLC, and TEAM.XYZ LLC.

9.     Defendant XYZ LLC is a Nevada Limited Liability Company with its principal place of business at 2800 Olympic Blvd., Santa Monica, CA 90404 and a registered address at 2121 E. Tropicana Ave, Suite 2, Las Vegas, NV 89119. Defendant XYZ LLC is a holding company that is the sole owner Defendant 123 LLC.

10.     Defendants ITMedia Solutions, DEV.XYZ LLC, TEAM.XYZ LLC, 123 LLC, and XYZ LLC are collectively referenced in this Complaint as "ITMedia."  At all times material to this Complaint, Defendants XYZ LLC, 123 LLC, and their wholly owned subsidiaries, ITMedia Solutions, DEV.XYZ LLC, and TEAM.XYZ LLC, or their predecessors, acting alone or in concert with others, advertised online loan-finding services to consumers throughout the United States, and marketed and sold lead generation services to businesses throughout the United States.

11.     In the course of the activities described in this Complaint, ITMedia controlled and used the following twelve limited liability companies as instrumentalities to acquire information about consumers, to market lead generation services to businesses throughout the United States, and to collect payments in exchange for leads and information about consumers:  Defendants GREAT LLC, General LLC, MEDIA LLC, ADV MARKET DIRECT LLC, Direct Ad Sales LLC, MARKETING SOLUTIONS 33, LLC, DEC MKT LLC, Ads Full3 LLC, Sunset Marketing Services LLC, Arrow Eagle, LLC, Arrow Hawk, LLC, and Gen Ads, LLC (referred to collectively herein as the "ITMedia-Controlled LLCs"). All business performed in the name of the ITMedia-Controlled LLCs, including website design, data transmission, and buying and selling consumer information, has been conducted by ITMedia as agent of an ITMedia-Controlled LLC or of a principal of an ITMedia-Controlled LLC.

a.  Defendant GREAT LLC ("Great LLC") is a Nevada Limited Liability Company that has registered its address as 3315 Hwy 50, Silver Springs, NV, 89429.

b.  Defendant General LLC is a Nevada Limited Liability Company that has registered its address as 560 East 200 North, Suite 18, Roosevelt, UT 84066.

c.  Defendant MEDIA LLC ("Media LLC") is a Nevada Limited Liability Company that has registered its address as 560 East 200 North, Suite 18, Roosevelt, UT 84066.

d.  Defendant ADV MARKET DIRECT LLC ("Adv Market Direct LLC") is a Utah Limited Liability Company that has registered its address as 560 East 200 North, Suite 18, Roosevelt, UT 84066.

e.  Defendant Direct Ad Sales LLC is a Utah Limited Liability Company that has registered its address as 560 East 200 North, Suite 18, Roosevelt, UT 84066.

f.  Defendant MARKETING SOLUTIONS 33 LLC ("Marketing Solutions 33") is a Utah Limited Liability Company that has registered its address as 560 East 200 North, Suite 18, Roosevelt, UT 84066.

g.  Defendant DEC MKT LLC ("Dec Mkt LLC") is a Utah Limited Liability Company that has registered its address as 72 North 300 East, Suite A, Roosevelt, UT 84066.

h.  Defendant Ads Full3 LLC is a Utah Limited Liability Company that has registered its address as 72 North 300 East, Suite A, Roosevelt, UT 84066.

i.  Defendant Sunset Marketing Services LLC is a Utah Limited Liability Company that has registered its address as 72 North 300 East, Suite A, Roosevelt, UT 84066.

j.  Defendant Arrow Eagle, LLC, is a Limited Liability Company organized under the laws of the Ute Indian Tribe and registered in Utah with the address 278 East 1875 South, Roosevelt, UT 84066.

k.  Defendant Arrow Hawk, LLC, is a Limited Liability Company organized under the laws of the Ute Indian Tribe and registered in Utah with the address 278 East 1875 South, Roosevelt, UT 84066.

l.  Defendant Gen Ads, LLC, is a Limited Liability Company organized under the laws of the Ute Indian Tribe and registered in Utah with the address 278 East 1875 South, Roosevelt, UT 84066.

### Individuals

12.  Defendant Michael Ambrose, as owner of one-half interest in Defendant XYZ LLC, owns a one-half interest in its subsidiaries, Defendants 123 LLC, ITMedia Solutions, DEV.XYZ LLC, and TEAM.XYZ LLC.  He is co-owner of Defendant Great LLC, was Chief Operating Officer of ITMedia Solutions and its predecessor, ITMedia, Inc., and was a co-owner of ITMedia, Inc.  Defendant Ambrose was a founder, member, and managing officer of Defendants General LLC and Media LLC, and, until 2015, a co-owner of these companies.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Ambrose, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

13.  Defendant Daniel Negari, as owner of one-half interest in Defendant XYZ LLC, owns a one-half interest in its subsidiaries Defendants 123 LLC,

ITMedia Solutions, DEV.XYZ LLC, and TEAM.XYZ LLC.  He is co-owner of Defendant Great LLC, was a co-owner and Chief Executive Officer of ITMedia Solutions and its predecessor, ITMedia, Inc., and was a co-owner of ITMedia, Inc. Defendant Negari was a founder, member, and managing officer of Defendants General LLC and Media LLC, and, until 2015, a co-owner of these companies.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Negari, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

14.     Defendant Jason Ramin has been Chief Executive Officer of Defendant ITMedia Solutions since August 2019.  Prior to August 2019, Defendant Ramin was the Vice President for Business Operations of Defendant ITMedia Solutions and its predecessor, IT Media, Inc.  Defendant Ramin has also acted as an officer of Defendant General LLC.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Ramin, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

15.     Defendant Grant Carpenter is the sole manager of Defendant ITMedia Solutions and, as its chief officer, is responsible for its day-to-day operations. Defendant Carpenter is also general counsel and chief compliance officer for Defendants ITMedia Solutions, DEV.XYZ LLC, TEAM.XYZ LLC, 123 LLC, and

XYZ LLC.  Defendant Carpenter also manages Great LLC and is responsible for authorizing ITMedia Solutions LLC to conduct business in the name of Great LLC. Defendant Carpenter is responsible for approving lead sales contracts in the name of Defendants Anisha Hancock and Sione Kaufusi for Defendants General LLC, Media LLC, Ads Full3 LLC, Adv Market Direct LLC, Dec Mkt LLC, Direct Ad Sales LLC and Gen Ads, LLC, including by executing agreements on their behalf. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Carpenter, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

16.     Defendant Anisha Hancock is the owner of Defendants General LLC, Media LLC, Ads Full3 LLC, Adv Market Direct LLC, Dec Mkt LLC, Direct Ad Sales LLC, Marketing Solutions 33, and Sunset Marketing Services LLC. Defendant Hancock has given ITMedia unqualified authority to conduct lead generation operations in her name and the name of the limited liability companies that she owns.  Since 2015, acting alone or in concert with others, she has had the authority to control the acts and practices set forth in this Complaint.  Defendant Hancock, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

17.     Defendant Sione Kaufusi is the owner of Arrow Eagle, LLC, Arrow Hawk, LLC, and Gen Ads, LLC.  Defendant Kaufusi has given ITMedia unqualified authority to conduct lead generation operations in his name and the name of Arrow Eagle, LLC, Arrow Hawk, LLC, and Gen Ads, LLC.  Since 2016,

he has had the authority to control the acts and practices set forth in this Complaint.  Defendant Kaufusi, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

## Common Enterprise

18.     ITMedia and the ITMedia-Controlled LLCs (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive, unfair, and unlawful acts and practices alleged below.  Corporate Defendants have conducted the business practices described below through an interrelated network of companies.  The companies that comprise ITMedia have common ownership, managers, business functions, employees, and office locations.  The ITMedia-Controlled LLCs have common control, and have shared contracting, business practices, funds, and assets.  Because the Corporate Defendants have operated as a common enterprise, each of them is liable for the acts and practices alleged below.

## COMMERCE

19.     At all times material to this Complaint, Defendants maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

20.     ITMedia creates and operates websites that urge consumers to complete detailed online loan applications, including social security information.  To induce consumers to submit their data, ITMedia has represented that the loan applications it solicits from them will be circulated to a "trusted network of

lenders" to secure loan offers.  In reality, ITMedia distributes and sells information from these loan applications as "leads" to a variety of entities without regard to whether these entities are lenders or use the consumers' data to make loans. ITMedia also has enticed loan applicants with misleading representations that its service will provide loans that involve no consideration of credit history. Additionally, ITMedia has used and has permitted others to use consumers' credit scores for impermissible purposes.

### ITMedia Solicits Consumer Loan Applications

21.    Since December 2012, ITMedia has operated at least 200 Internet sites where it posts advertising that targets consumers seeking online payday loans, consumers with poor credit, and consumers seeking personal and installment loans for as much as $35,000.  The domains that ITMedia has used to operate these sites include:

| | | |
|---|---|---|
| badcreditloans.com | borrowspot.com | mobileloans.com |
| personalloans.com | burstloans.com | mypaydayloans.com |
| cashadvance.com | cashnow.com | onlinepaydayloans.com |
| cashusa.com | cashtoday.com | paydayadvance.com |
| signatureloan.com | fast-loans.net | paydayloannow.com |
| badcredit.com | fastmoney.com | paydayloans.com. |

22.    ITMedia's Internet sites represent that they find loans for consumers who complete an online form that ITMedia has described as a loan application or request.  **Appendices 1-6** contain examples of ITMedia's Internet sites.

**ITMedia Represents that the Information Consumers Provide Will Be Shared With Trusted Lenders to Secure Loans**

23.     To induce consumers to complete loan applications, ITMedia has published websites that assure consumers that it will share the information provided by each consumer with qualified and trustworthy loan providers, and that it only shares consumers' information to find a loan for the consumer.  ITMedia has conveyed these messages through the following statements and similar statements on its websites:

- We only share your information with our network of trusted lenders, lending partners and financial service providers, in an attempt to connect you with a lender or lending partner that can offer you a loan. *(signatureloan.com, 2020)*

- Customers simply fill out our secure online form, then hit the SUBMIT button. From there, your protected data will only be shared with qualified lenders. *(cashadvance.com, FAQ, 2017)*

- [W]e serve as a connector between potential online loan borrowers and the skilled members of our trusted nationwide lending network. The PaydayAdvance.com affiliate lenders have been carefully chosen on the basis of their reputability and trustworthiness, as well as their ability to provide people with quick and easy access to needed funds. *(PaydayAdvance.com 2017, Rates & Fees)*

- MobileLoans.com connects consumers with an entire network of lenders who offer a variety of loans. We present your information to our vast network of trusted lenders and allow you to decide if the loan offer presented suits your needs. *(Mobileloans.com 2020, How it Works)*

- SignatureLoan.com only works with professional lenders and lending partners who engage in responsible lending

practices and are authorized to lend money in the form of signature loans to consumers. *(signatureloan.com 2020, best-lending-practices)*

24.     ITMedia's loan forms reinforce these website representations that ITMedia conveys the details requested in its loan forms to loan providers only.  For example, personalloans.com contained the following representations next to the boxes seeking detailed information from consumers regarding their application or request for a loan:

## Why do we need this information?

Don't worry - our lenders and lending partners review requests for all credit and loan types. We simply ask for this information to help ensure that you are connected with a lender or lending partner that can work for you!

Providing us with accurate, up-to-date information is essential to being considered for a loan.

## Contact Information

We collect this information because, if you are approved, lenders or lending partners will often reach out to you quickly to confirm your loan.

## Employment Information

Our lenders and lending partners require this information to consider you for a loan.

## Identity and Bank Information

Lenders and lending partners must be able to verify your identity when reviewing your request.

1

2

### ITMedia Has Represented that Loans are Available
### Regardless of Credit Rating or History

3

4

5

25.     At certain sites, ITMedia has also represented that loans are available without regard for credit scores or history to consumers who complete ITMedia's loan forms.  For example, ITMedia has stated:

6

7

8

9

- **We're Here For You**
  Every day, we help people like you secure loans regardless of your credit rating. We're here to help you find solutions to your financial needs.
  *(badcreditloans.com, 2020;Burstloans.com, 2020)*

10

11

12

- In the past, gaining access to loan funds required a pile of paperwork and a stellar credit history. Bad credit personal loans, however, can now be obtained quickly and without any credit score requirements. *(badcreditloans.com/personal-loans, 2020)*

13

14

15

16

- MobileLoans.com [Burstloans.com/CashUSA.com] lenders do not require credit scores and do not ask applicants to provide credit score details. Your credit score will not affect the fees and terms of your loan in any way. (*Mobileloans.com 2020, Rates and Fees; burstloans.com; Rates and Fees, 2020; CashUSA.com 2020, Rates and Fees*)

17

18

19

20

21

- Your credit history will neither hurt you chances of getting a cash advance nor have a negative effect on the interest rates and fees that you are charged.  If you have poor credit or even no credit, then you still have the opportunity to get the cash you need. (*DirectDepositLoans.com 2019, Why Cash Advance Payday Loans May Help with Your Emergency Cash Needs*)

22

Examples of advertising with these representations appear in **<u>Appendices 5 and 6</u>**.

23

24

**ITMedia's Representations to Consumers About Its Use of Consumer Information Are Deceptive**

26.     At sites that have made the representations set forth above, ITMedia has collected consumers' Internet protocol address and online tracking data, and urges consumers to complete loan forms that require the following information:

     a)  contact information, including names, residential addresses, email addresses, and telephone numbers;

     b)  consumers' birthdates, Social Security numbers, bank-routing and account numbers, and driver's license and state identification numbers;

     c)  information regarding the consumers' resources, including whether and where consumers are employed, how long they have been employed, whether they own a home or a car, monthly income, and how frequently they are paid;

     d)  consumers' job titles and whether they are active members of the military; and

     e)  consumers' credit score range and reason for borrowing.

27.     ITMedia's representations regarding the manner in which information required by its online forms will be distributed and used are important to consumers deciding whether to share their information because of concerns regarding unwanted marketing, invasion of privacy, and identity theft.

28.     Rather than connect consumers to lenders as promised, ITMedia distributes the consumer information it collects on these loan forms to a variety of entities in a lead marketplace in which the consumer data—including sensitive

personal and financial information—is transmitted to prospective buyers. Entities participating in this marketplace bid against each other to purchase the opportunity to use the consumer information.

29.    Although ITMedia represents that it provides consumers' information to entities that will offer loans to consumers, ITMedia in fact does not require that the entities that receive and bid to purchase consumer information, including complete loan applications, be loan providers. Furthermore, ITMedia does not require that these entities use the information they receive to offer loans.

30.    When ITMedia does not succeed in selling consumer information to prospective buyers in its lead marketplace, it offers information about such "declined" consumers to other entities seeking leads, marketing lists, or other compilations of consumer data from the loan applications. ITMedia also directs some of these declined consumers to online advertising for loans and non-loan product and services, in exchange for compensation from the entities advertising those products and services.

31.    ITMedia distributes leads, marketing information and other data with consumer information to entities that are not loan providers. Furthermore, ITMedia does not require that these entities use the information they receive to offer loans.

32.    Because ITMedia does not require that the recipients of the information collected on its loan forms be lenders, it has provided consumer information collected from loan applications to:

    a.    businesses that are not lenders but illegally market loan products, including Lead Express, Inc., Camel Coins, Inc., and Sea Mirror, Inc., as

described in *Federal Trade Commission v. Lead Express, Inc.*, No. 20-cv-00840 (D. Nev.);

   b.  debt negotiation and credit repair servicers that do not provide loans;

   c.  pre-paid debit card sellers;

   d.  marketers that license the information to advertise to consumers through email, text messages and telemarketing, and are not required to use the information to offer loans;

   e.  entities whose business and interest in the data is not known to ITMedia; and

   f.  marketers and lead aggregators that share the consumer information with other entities whose identity, business, and interest in the information is not known to ITMedia.

33.    ITMedia seldom sells the information consumers submit in their loan applications to lenders. Since January 2016, for the overwhelming majority of consumers (*i.e.*, more than 84%) who have submitted loan applications at an ITMedia website, ITMedia has either (i) sold the consumers' information to entities that are not lenders (including non-lender aggregators, marketers, and companies whose use of the information is unspecified); (ii) used the consumers' loan applications to create targeted marketing data for telemarketers, email advertisers, and other entities, or (iii) directed the consumers to online advertisements.

34.    Even when ITMedia provides information from consumers' loan applications to entities that are loan providers, ITMedia does not require that they use the information to make loan offers. To the contrary, ITMedia permits and

sometimes expressly authorizes such entities to use the information ITMedia collects through its loan forms to market non-loan products or services.

35.    Additionally, although ITMedia has made representations that loans are available without regard to credit history, ITMedia's contracts do not require that the recipients of consumer information or downstream entities offer loans regardless of consumers' credit history.  ITMedia sells leads to entities without regard for whether they or downstream entities check and evaluate consumers' credit history.

36.    Since at least 2012, the online lending trade organization to which ITMedia belongs has warned that online lenders and advertisers promoting online lending services should not represent to consumers that loans are available without credit checks because doing so is misleading.  Lenders considering an online loan application may run credit checks through a major consumer reporting agency or a specialized consumer reporting agency to check a consumer's background before extending credit.

37.    ITMedia has posted inconspicuous fine-print disclaimers, terms and conditions, and privacy policies that are inconsistent with the representations they have made to induce consumers to complete loan forms.  For example, some websites contain statements that application information might be shared with entities that are not loan providers or that will offer products and services other than loans and that credit history may be a factor in lending decisions.  These statements have not appeared on all the websites operated by ITMedia and, even when they have appeared, have been buried in lengthy paragraphs at the bottom of web pages or in online terms that are not as prominent as the advertising that they

contradict or qualify.  **Appendices 2–4** contain examples of paragraphs that include such statements.

38.    Similarly, ITMedia has published Internet pages that name non-lender entities to which ITMedia gives consumer information, but ITMedia has kept this information from consumers by not including links to these pages in most of its Internet sites and by placing any links that do appear in locations where consumers are unlikely to view them.  On pages entitled "Third Parties," ITMedia has listed "marketing partners" to which it transmits information about consumers' loan requests.  In some instances, these pages also state that additional, unnamed entities may contact the consumer or pull the consumers' credit information.  **Appendix 7** is an example of one of these "Third Parties" pages.  Most of ITMedia's sites have contained no link to these "Third Parties" lists.  During certain periods, some of ITMedia's sites have contained a link to a "Third Parties" list, but these links have not been displayed as consumers begin or proceed through the multi-step loan forms, or on pages that describe how the service operates.  Instead, the links to the names of "Third Parties" have appeared, if at all, in places where consumers are not likely to notice or open the link – in site maps for a given domain or small print at the last step in completing ITMedia's loan forms.

**ITMedia Indiscriminately Shares Sensitive Consumer Information**

39.    When ITMedia distributes consumers' loan application information to prospective buyers in its lead marketplace, it does not mask or otherwise restrict access to sensitive personal and financial information, such as social security numbers and financial account information.

40.     ITMedia transmits loan applications to entities that have not purchased the consumers' information.  ITMedia could selectively mask or withhold information in the applications so that only entities that purchase an application receive sensitive information, but it chooses not to do so.  Indeed, because of the way ITMedia distributes consumer information, it sends most loan applications—unmasked—to multiple entities that have not committed to purchase the information, much less offer a loan to the consumer.

41.     Beginning in or about 2015, ITMedia authored a document described as a policy for safeguarding sensitive information that it collects from consumers, and it subsequently authored documents that purport to be revised or updated policies for protecting such information.

42.     ITMedia's policies and procedures do not require that an entity that obtains leads from ITMedia certify that it uses such information solely to respond to the consumer's loan request.

43.     ITMedia's policies and procedures lack any provision for assessing whether purchasers and prospective purchasers safeguard information they received from ITMedia or use such information for purposes other than offering a loan.

44.     Additionally, ITMedia has no program for investigating whether sensitive consumer information it furnishes to potential purchasers is safeguarded or used for purposes other than offering a loan.  For example, "seeding" data by adding unique dummy data is a common technique to detect leaks or breaches in data security, and to monitor how data is being used.  ITMedia has the capability to "seed" the consumer information it distributes.  Nonetheless, ITMedia has not

implemented a program to regularly seed leads to test for security breaches, or to detect how leads are being used by their direct and indirect recipients.

45.     Some entities that receive consumer information from ITMedia represent to ITMedia that they have policies and procedures to ensure that such information is securely processed, stored, transmitted, and disposed.  ITMedia has no program for assessing the content of such policies and procedures, whether such policies and procedures have been implemented, or whether such policies and procedures are effective.

46.     ITMedia has shared loan applications that include consumers' sensitive information with entities that have not disclosed the physical location of their business, whose business is unknown to ITMedia, that have contracted on behalf of unnamed businesses, and that have not stated for what purpose, or with whom, they share leads.

47.     The types of personal, financial, and credit details about consumers that ITMedia collects and disseminates are often used to commit identity theft and fraud.  For example, identity thieves use stolen names, addresses, and Social Security numbers to apply for credit cards in the victim's name.  When the identity thief fails to pay credit card bills, the victim's credit suffers.  Stolen personal information is also used to create phantom debt records used by debt collectors to harass consumers and demand payment for debts the consumers do not owe. Misappropriated bank account information can be used for unauthorized billing or fraudulent check scams.  Identity thieves also use Social Security numbers and bank account information to intercept consumers' tax refunds fraudulently.

48.   ITMedia's practice of broadly disseminating consumer information, including to entities that share information with others whose identities and use of the information are unknown to ITMedia, exposes consumers to the risk of substantial harm from identity theft, imposter scams, unauthorized billing, phantom debt collection, and other misuse of the consumers' information.  Some consumers have complained that, shortly after submitting loan applications to ITMedia, they have received communications using the names of ITMedia websites to present sham loan offers or demands for repayment of counterfeit debt.

49.   The harms from ITMedia's failure to assess and evaluate whether the information that it disseminates is securely processed, stored, transmitted, and disposed, and its practice of disseminating consumer's sensitive personal and financial information to entities whose identities and use of the information are unknown to ITMedia are not outweighed by benefits to consumers or competition from these practices.

50.   In most, if not all, instances, the consumers who have submitted sensitive information on ITMedia's loan forms do not know about and have not consented to ITMedia sharing their sensitive personal and financial information with entities that are not using the information solely to respond to the consumer's request for a loan.  Consumers cannot reasonably avoid the harms and potential harms that the disclosures of their information cause, including possible identity theft and account fraud.  Insofar as ITMedia has posted statements that consumers' information is shared with entities that are not using the information to respond to the consumer's request for a loan, it has done so in pages separate from its loan forms, and has not required that consumers view such pages before submitting the

information.  Even if consumers were to have clicked on the hyperlinks that lead to such pages, they would be unlikely to have seen the statements regarding the use of consumers' information because this information has been buried in dense text, in small font, and in single space type.

### ITMedia Has Impermissibly Used Credit Scores for Marketing

51.    ITMedia has acquired additional data about consumers who submit loan applications at personalloans.com by purchasing the credit scores of such consumers from a national consumer reporting agency.

52.    Since 2014, ITMedia has purchased credit score information on millions of consumers.  ITMedia has acquired these credit scores pursuant to a contract in Defendant General LLC's name.

53.    When disseminating leads to potential buyers, ITMedia has:

a.  used credit scores as a factor in its strategy for maximizing sales, such as evaluating which entities are most likely to purchase the leads;

b.  set lead prices based on credit scores, demanding a higher price for the ability to market to consumers with higher scores;

c.  sent consumer information to potential buyers with codes that identify the range into which each consumer's credit score – as reported by the consumer reporting agency – falls, thereby communicating the score with ranges as narrow as 10 to 20 points; and

d.  used credit scores to filter consumer information transmitted for evaluation based on credit score ranges selected by the potential buyers, thereby selling targeted leads and communicating the consumer report

information ITMedia obtained from the consumer reporting agency to potential buyers.

54.    ITMedia has not required that each entity to which it sells credit score-based leads certify that it will use such leads solely to respond to the consumer's loan request.  In particular, ITMedia has not required that each entity to which credit score-based leads are sold (a) identify each recipient or end-user of such leads, or (b) certify that the entity and anyone that receives leads through the entity use such leads solely to respond to the consumer's loan application or request.

55.    ITMedia represents to the consumer reporting agency from which it has procured credit scores that Defendant General LLC uses the scores to "pre-qualify" the consumer to whom the report relates (*i.e.*, check to see if the consumer qualifies for certain credit terms).  But ITMedia does not (a) acknowledge that ITMedia uses the scores to price and filter leads for marketing; (b) provide the consumer reporting agency with the identities of the entities to which ITMedia has furnished credit-score based consumer information by using credit scores to filter or code leads; or (c) provide the consumer reporting agency with the purposes for which such entities use such information.

**Participation and Knowledge of Individual Defendants**

56.    Defendants Ambrose, Negari, Ramin, and Carpenter have reviewed ITMedia's representations to consumers, negotiated or signed contracts for the sale of consumer information, and participated in formulating and implementing policies and practices for lead distribution.  Among other activities:

a. Defendant Ambrose executed contracts in which Defendants agreed to distribute consumers' sensitive personal and financial information to entities that were not lenders, entities that were sharing information with unidentified lead buyers, and entities whose business and interest in obtaining sensitive information on consumers is unknown to Defendants. Defendant Ambrose authorized the distribution of consumer information to, among others, Lead Express, Inc., Camel Coins, Inc., and Sea Mirror, Inc., debt negotiation marketers, and telemarketers, even though distribution of consumers' information to these entities was contrary to the representations ITMedia made to induce consumers to complete loan forms. Defendant Ambrose also executed agreements to procure credit scores of consumers who completed loan forms for use in marketing and to sell credit-score based leads to entities purchasing leads from ITMedia.

b. Defendant Negari executed contracts in the name of Defendant General LLC to distribute consumers' sensitive personal and financial information to marketers and lead aggregators that do not offer loans, but shop consumers' information to other entities whose identity, business, and interest in the information is not known to ITMedia. Defendant Negari also participated in securing and using consumer credit scores to filter leads for sale and augment the marketing of information from consumers' loan forms to participants in ITMedia's marketplace.

c. Defendant Ramin operated and supervised the operation of the ITMedia marketplace in which loan applications are distributed to potential buyers without withholding sensitive personal or financial information, and

negotiated and executed contracts in which Defendants agreed to distribute such information to entities that were not lenders, entities that were sharing information with unidentified lead buyers, and entities that made no commitment to use the consumer information distributed by ITMedia to make loans.  Defendant Ramin also participated in the purchase of credit scores of consumers who completed loan forms, offered and distributed credit score information to potential buyers, filtered leads based on credit scores to create marketing lists, and used the credit scores in ITMedia's marketing to potential buyers.

d.  Defendant Carpenter approves potential buyers participating in ITMedia's lead marketplace, including approving entities that are not lenders, but debt relief services, pre-paid debit card sellers, marketers, lead aggregators, and other entities whose identity, business, and interest in the information is not known to ITMedia.  He is the sole manager of ITMedia Solutions, is the chief officer of the company, and has full power to direct and manage the business affairs of the company.  He is responsible for day-to-day operations, and the negotiation and performance of all contracts of ITMedia Solutions.  Defendant Carpenter also reviewed and approved ITMedia's purchase of credit scores, all the contracts under which ITMedia has disseminated consumers' information, and supervised the representations made on ITMedia's websites to induce consumers to submit sensitive information.

Through these activities and their positions as officers or managers of various Defendants, these individuals have actual knowledge of ITMedia's deceptive,

unfair, and unlawful conduct, have been recklessly indifferent to such conduct, or intentionally avoid knowledge or such conduct.

57.   Defendants Hancock and Kaufusi intentionally avoid knowledge of ITMedia's conduct and the truth of its representations, and are aware that it is highly probable that ITMedia, when conducting business in their names, is engaged in deceptive, unfair, and unlawful conduct, including making misrepresentations to consumers or misusing information obtained from consumers for profit.

58.   Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission because, among other things:  the websites operated by ITMedia continue to convey misleading representations that consumers' information is used only for the purpose of obtaining the loans requested and that such information is shared only with loan providers.  Moreover, ITMedia continues to distribute consumers' loan application information indiscriminately to the types of entities described above without policies and procedures to assure that these entities safeguard information they receive from ITMedia and use such information only to offer loans.  Finally, Defendants' business relationships, contracts, and experience in collecting and selling consumer data for profit give them the means, ability and incentive to continue the unlawful conduct described in this Complaint.

## **VIOLATIONS OF THE FTC ACT**

59.   Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

60.     Misrepresentations or deceptive omissions of material fact are deceptive acts or practices prohibited by Section 5(a) of the FTC Act.  Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

## Count I
## Deceptive Representations

61.     In numerous instances in connection with soliciting consumers for information, Defendants, through ITMedia's actions, represent or have represented, directly or indirectly, expressly or by implication, that:

    a.   They will only share information consumers submit on loan forms to connect the consumer with a loan offer;

    b.   Information consumers submit on loan forms will be given to loan providers only; and

    c.   Consumers who submit loan forms will be able to receive a loan without regard for their credit score or history.

62.     The representations set forth in Paragraph 61 are false and misleading, or were not substantiated at the time the representations were made.

63.     Therefore, the making of the representations as set forth in Paragraph 61 constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count II**
**Unfair Distribution of Sensitive Information**

64.    In numerous instances, Defendants, through ITMedia's actions, have shared and sold sensitive personal and financial information from consumers' loan forms—including consumers' full names, addresses, email addresses, phone numbers, birthdates, Social Security numbers, bank routing and account numbers, driver's license and state identification numbers, income, status and place of employment, military status, homeownership status, and approximate credit scores—without consumers' knowledge or consent and without regard for whether the recipients are lenders or otherwise had a legitimate need for the information.

65.    The acts or practices as set forth in Paragraph 64 cause or are likely to cause substantial injury to consumers that consumers could not reasonably avoid themselves and that are not outweighed by countervailing benefits to consumers or competition.

66.    Therefore, the acts or practices as set forth in Paragraph 64 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

67.    The FCRA was enacted in 1970, became effective on April 25, 1971, and has been in force since that date.  The Fair and Accurate Credit Transactions Act ("FACT Act") amended the FCRA in December 2003, and the Dodd-Frank Act amended the FCRA in July 2010.

68.    Section 621 of the FCRA provides that, for the purpose of the exercise by the FTC of its functions and powers under the FTC Act, a violation of any requirement or prohibition imposed under the FCRA shall constitute an unfair or

deceptive act or practice in commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). 15 U.S.C. § 1681s(a).

69.    Section 621 of the FCRA, 15 U.S.C. § 1681s, authorizes the Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FCRA by all persons subject thereto except to the extent that enforcement specifically is committed to some other governmental agency under subparagraphs (A) through (G) of 15 U.S.C. § 1681s(b)(1), irrespective of whether the person is engaged in commerce or meets any other jurisdictional tests set forth by the FTC Act.  In the event of a knowing violation of the FCRA, the FTC may commence an action to recover civil penalties.  *Id.* § 1681s(a)(2).

70.    Enforcement of the FCRA with respect to Defendants is not specifically committed to a governmental agency under subparagraphs (A) through (G) of 15 U.S.C. § 1681s(b)(1).

71.    Section 603(d) of the FCRA, 15 U.S.C. § 1681a(d), defines a "consumer report" as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under Section 604.

72.    Credit scores—numerical scores or categorizations that are assigned to consumers based on risk models designed to predict the likelihood of certain

credit behaviors—are "consumer reports" as defined in Section 603(d) of the FCRA.

73.     Marketing data or lists that identify consumers with a specified credit score, credit score range, or other credit-related characteristics are "consumer reports" as defined in Section 603(d) of the FCRA.

**FCRA Restrictions on Permissible Use (§ 604)**

74.     Section 604(f)(1) of the FCRA, 15 U.S.C. § 1681b(f)(1), prohibits persons from using or obtaining a consumer report for any purpose unless it is for a purpose authorized under Section 604.  The circumstances enumerated in Section 604 are referred to as the "permissible purposes" of consumer reports.

75.     Section 604(f)(2), 15 U.S.C. § 1681b(f)(2), further provides that a person shall not use or obtain a consumer report unless the prospective user has certified the purpose for which the report will be used in accordance with Section 607, 15 U.S.C. § 1681e.  To fulfill this requirement, a prospective user must identify themselves and certify both the purposes for which the information is sought and that the information will be used for no other purpose.  15 U.S.C. § 1681e(a).

76.     Obtaining or using a credit score or other consumer report to filter, price, market, or evaluate leads for marketing is not a permissible purpose under Section 604 of the FCRA.

77.     Obtaining or using a credit score or other consumer report to solicit consumers to initiate a transaction, outside the context of a credit or insurance transaction that satisfies Section 604(c), 15 U.S.C. § 1681b(c), is not a permissible purpose under Section 604 of the FCRA.

78.     As described in Paragraph 53.a through 53.d, ITMedia obtains and uses credit scores for purposes that are not permissible purposes under Section 604 of the FCRA.

79.     Since at least 2013, Defendants, directly or through Defendant Carpenter or other agents, have known of the requirements of the FCRA, that the FCRA permits the use of consumer report information solely for a permissible purpose, and that it is unlawful to use credit scores procured from a consumer reporting agency for any reason other than the permissible purpose certified to the consumer reporting agency.

80.     Section 621(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A), as adjusted by 16 C.F.R. § 1.98(m), authorizes the Court to award monetary civil penalties of not more than $4,111 for each knowing violation of the FCRA that constitutes a pattern or practice of violations of the statute.

81.     Each instance in which Defendants have violated Section 604(f) of the FCRA, 15 U.S.C. § 1681b(f), constitutes a separate violation of the FCRA for the purpose of assessing monetary civil penalties.

**Count III**
**Obtaining and Using Consumer Reports without a Permissible Purpose**

82.     As described in Paragraphs 51 through 53 and 76 through 79, Defendants, through ITMedia's actions, have obtained and used consumer reports without a permissible purpose.

83.     By and through the acts and practices described in Paragraphs 51 through 53 and 76 through 79, Defendants have violated Section 604(f) of the FCRA, 15 U.S.C. § 1681b(f).

84.     Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraphs 51 through 53 and 76 through 79, also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

85.     The acts and practices described in Paragraphs 51 through53 and 76 through 79, constitute a pattern or practice of knowing violations of the FCRA under Section 621(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A).

**FCRA Requirements for Persons Reselling (§ 607(e))**

86.     Section 607(e)(2)(A), of the FCRA, 15 U.S.C. §1681e(e)(2)(A), requires persons who procure consumer reports for purposes of reselling the reports (or any information in the reports) to "establish and comply with reasonable procedures designed to ensure that the report (or information) is resold by the person only for a purpose for which the report may be furnished under Section 604." These procedures must include requirements that each person to which the report (or information) is resold identify each user of the resold report (or information), certify the purposes for which the report (or information) is sought, and certify that the report (or information) will be used for no other purpose.

87.     Section 607(e)(2)(B) of the FCRA, 15 U.S.C. § 1681e(e)(2)(B), requires that persons who procure consumer reports for purposes of reselling the report (or information in the report) must, before reselling the report, make reasonable efforts to verify the identifications and certifications made by end-users to demonstrate that the report (or information in the report) will be used for a permissible purpose, and used for no other purpose.

88.     Section 607(e)(1) of the FCRA, 15 U.S.C. § 1681e(e)(1), requires persons who procure consumer reports for purposes of reselling the reports (or any information in the report) to disclose to the credit reporting agency that originally furnishes the report the identity of the end-user of the report and the permissible purpose for which the report is furnished.

89.     ITMedia has procured credit scores for the purpose of selling consumer information that includes information from credit scores.  ITMedia has conveyed information from credit scores to prospective purchasers when it has filtered consumer loan applications by credit score or has tagged the information it sells with price codes based on credit scores.

90.     ITMedia has not instituted or maintained procedures to identify the persons that use information from the consumer reports that it has procured for resale.  In particular, ITMedia's lead sale contracts do not identify all the entities that may receive leads pursuant to the agreement, and explicitly or implicitly contemplate that leads will be shared with unnamed entities.  Furthermore, ITMedia has sold leads that convey consumer report information to entities that seek information for the use of others, without requiring that the user or users of the report information be identified.

91.     ITMedia has not established or complied with procedures to limit prospective purchasers' use of information from the consumer reports that it has procured for resale.  In particular, ITMedia does not require that recipients of such information provide any certification specifying the purposes for which the recipients use consumer report information, or certify that information will be used for specified purposes and no other.  In numerous instances, ITMedia does not

require recipients to identify the purposes for which they use the consumer information, accepts vague descriptions of the purpose, and/or accepts representations that do not state that the consumer information will not be used for other purposes.

92.     ITMedia has not instituted or maintained procedures to verify prospective purchasers' representations regarding their use of information from consumer reports it has furnished.  In particular, ITMedia has sold consumer report information without making a reasonable effort to verify the identity of a recipient or the purposes for which a recipient is using the consumer report information.

93.     Each instance in which Defendants have procured credit scores for resale without establishing and complying with procedures to limit the use of consumer report information to the end users and purposes permitted by the FCRA, or did not disclose to the consumer reporting agency that furnishes the scores the identity of the end-user of consumer report information and each purpose for which consumer report information will be used, constitutes a separate violation of the FCRA for the purpose of assessing monetary civil penalties.

### Count IV

**Failure to Establish and Comply with Procedures to Avoid Impermissible Use of Consumer Report Information Obtained for Resale**

94.     As described in Paragraphs 54 and 89 through 92, Defendants have failed to establish or comply with reasonable procedures designed to limit the sale of consumer report information purchased for resale to the users and purposes permitted by the FCRA, and no other.  For example, they have failed to require that purchasers and end-users identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other

purpose.  Defendants have also failed to make reasonable efforts to verify the identity of each purchaser and the purposes for which each purchaser or end-user is using consumer report information sold by ITMedia.

95.     By and through the acts and practices described in Paragraphs 54 and 89 through 92, Defendants have violated Section 607(e)(2) of the FCRA, 15 U.S.C. § 1681e(e)(2).

96.     Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraphs 54  and 89 through 92, also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

97.     The acts and practices described in Paragraphs 54 and 89 through 92 constitute a pattern or practice of knowing violations of the FCRA under Section 621(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A).

## Count V
## Reselling Consumer Reports to Unidentified Users

98.     As described in Paragraphs 51 through 55, Defendants, through ITMedia's actions, have procured credit scores for the purpose of selling leads filtered by credit score but have not disclosed to the consumer reporting agency that furnishes the consumer report the identity of the end-users to which Defendants furnish credit score information or the purposes for which these end-users use such information.

99.     By and through the acts and practices described in Paragraphs 51 through 55, Defendants have violated Section 607(e)(1) of the FCRA, 15 U.S.C. § 1681e(e)(1).

100.   Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraphs 51 through 55 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

101.   The acts and practices described in Paragraphs 51 through 55 constitute a pattern or practice of knowing violations of the FCRA under Section 621(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A).

## CONSUMER INJURY

102.   Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the FCRA.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that the Court:

A.   Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief;

B.   Enter a permanent injunction to prevent future violations of the FTC Act and the FCRA by Defendants;

C.   Award Plaintiff monetary civil penalties from each Defendant for every separate violation of the FCRA; and

D.   Award Plaintiff the costs of bringing this action, as well as any additional relief the Court determines to be just and proper.

Dated: January 5, 2022                  Respectfully submitted,

                                        **FEDERAL TRADE COMMISSION**


                                        Michael E. Tankersley
                                        mtankersley@ftc.gov; (202) 326-2991
                                        Daniel O. Hanks
                                        dhanks@ftc.gov; (202) 326-2472
                                        Federal Trade Commission
                                        600 Pennsylvania Avenue NW
                                        Washington, DC  20580
                                        Facsimile:  202-326-3768

                                        /s/Matthew H. Fine
                                        Matthew H. Fine (CA Bar. No. 300808)
                                        mfine@ftc.gov
                                        Federal Trade Commission
                                        10990 Wilshire Blvd, Suite 400
                                        Los Angeles, CA  90024
                                        Tel:  (310) 824-4300
                                        Fax:  (310) 824-4380